Filed 7/9/24  P. v. White  CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | C098786 |
| v. | (Super. Ct. No. 04F07255) |
| JOHN DOUGLAS WHITE, | |
| Defendant and Respondent. | |

In 2008, a jury convicted defendant John Douglas White of second degree murder. In 2019, defendant filed a petition for resentencing under Penal Code section 1170.95 (now 1172.6).[1]  The trial court summarily denied the petition but this court reversed,

---

[1] Undesignated statutory references are to the Penal Code.  Section 1170.95 was renumbered as section 1172.6 without substantive change on June 30, 2022.  (See Stats. 2022, ch. 58, § 10.)  We will refer to the current statute throughout this opinion.

concluding the record did not establish as a matter of law that defendant was convicted on a currently valid theory of murder. (*People v. White* (Oct. 3, 2022, C094499) [nonpub. opn.] (*White*).) This court determined the aiding and abetting instructions did not preclude the jury from imputing malice to defendant based solely on his participation in an underlying crime. (*Ibid*.)

Following an evidentiary hearing on remand, the trial court granted defendant's petition and vacated his murder conviction, concluding the People did not prove beyond a reasonable doubt that defendant aided and abetted the murder or any underlying crime. Based on defendant's admission that he had disposed of knives and bloody clothing after the murder, the trial court found him guilty of being an accessory after the fact and resentenced him to an upper term of three years.

The People appeal, arguing the trial court erred in (1) vacating the murder conviction and (2) finding that defendant was only an accessory after the fact.

We conclude the trial court did not err in vacating defendant's murder conviction. The record supports the trial court's finding that the evidence did not prove beyond a reasonable doubt that defendant directly aided and abetted an implied malice murder. But the trial court should not have found that defendant was only an accessory after the fact. It should have given deference to the jury's finding that, at the very least, defendant aided and abetted the underlying assault which ended the victim's life.

We will affirm in part and reverse in part. We will affirm the judgment to the extent it vacated defendant's murder conviction. But we will reverse the conviction of defendant as an accessory after the fact, vacate the sentence imposed on that conviction, and remand the matter for the trial court to (a) redesignate the vacated murder conviction as the underlying felony of assault with a deadly weapon, and (b) resentence defendant accordingly.

BACKGROUND

"Maintenance workers found a body in a park restroom. The victim had died of multiple stab wounds. (*People v. Campaz* (Apr. 27, 2010, C056880 & C058484) [nonpub. opn.] (*Campaz*).)[2]

"Codefendant Robert[] Moreno Montoya testified it was defendant's idea to kill the victim. According to Montoya, defendant said to Montoya and codefendant Carlos Tomas Campaz, Jr., that the victim raped his sister, so the victim ' "had to go." ' Defendant 'brainstormed various scenarios but settled on luring the victim to the park on the pretext that someone wanted to buy drugs from the victim.' Defendant showed Montoya and Campaz two knives he was carrying. (*Campaz, supra*, C056880 & C058484.)

"After doing drugs with the victim, Montoya drove the victim to the park in defendant's pickup truck. At the park they met up with defendant and Campaz. They all went into the public restroom to smoke methamphetamine where, according to Montoya, defendant struck the victim in the face and stabbed him in the chest. Campaz punched the victim in the stomach. Defendant pushed the victim into Montoya, who stabbed the victim in the stomach with a sheath knife. The victim fell to the ground. Defendant repeatedly urged Montoya to 'finish him off.' (*Campaz, supra*, C056880 & C058484.)

"The jury saw a videotaped police interview in which defendant admitted using the park restroom just before the killing but denied killing the victim. Defendant

---

[2] The background is taken from this court's opinion in defendant's prior appeal, *White, supra*, C094499. This court derived the facts from the opinion in defendant's direct appeal, *Campaz, supra*, C056880 & C058484. But the record in this appeal includes evidence adduced during the second trial that resulted in defendant's murder conviction. At the section 1172.6 hearing, the People relied solely on that evidence, and the trial court's ruling demonstrates it carefully reviewed that evidence. All facts contained in the discussion portion of this opinion are based on the trial transcript and not this court's prior opinions. (*People v. Clements* (2022) 75 Cal.App.5th 276, 293.)

admitted being angry with the victim over use of defendant's vehicle and failure to pay money owed for drugs, but defendant said the victim did not know his sister.  In the interview defendant declined to implicate anyone else.  (*Campaz, supra*, C056880 & C058484.)

"However, defendant testified at trial that Campaz and Montoya were responsible for the killing, and all defendant did was dispose of the weapons.  Defendant said he thought they were going to the park for drugs.  When he went into the bathroom, Campaz and Montoya had already killed the victim.  The three of them left in a panic and defendant later threw their knives in the river and burned their clothes.  (*Campaz, supra*, C056880 & C058484.)

"Defendant, Montoya and Campaz were charged with murder and tried together with separate juries.  Montoya's jury found him guilty of second degree murder and found true an allegation that he personally used a knife.  Campaz's jury found him guilty of first degree murder but found not true allegations that he personally used a knife and lay in wait.  Defendant's jury deadlocked, and the trial court declared a mistrial. (*Campaz, supra*, C056880 & C058484.)

"Defendant was tried a second time.  On retrial, Montoya testified as a prosecution witness, and the prosecution dropped a natural and probable consequences theory. (*Campaz, supra*, C056880 & C058484.)  The trial court instructed the jury on first and second degree murder (CALCRIM No. 520) and aiding and abetting first and second degree murder (CALCRIM No. 401).  The jury found defendant not guilty of first degree murder but guilty of second degree murder, with a finding that he did not personally use a knife.  The trial court sentenced defendant to an aggregate 15 years to life in state prison. (*Campaz, supra*, C056880 & C058484.)"  (*White, supra*, C094499.)

In January 2019, defendant filed a petition for resentencing under section 1172.6. The trial court summarily denied the petition in July 2021.  This court reversed, concluding the record did not establish as a matter of law that defendant was convicted

4

on a currently valid theory of murder.  Relying primarily on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), this court explained that the jury instructions did not preclude the jury from imputing malice to defendant based solely on his participation in an underlying crime; the instructions did not require the jury to find that defendant "aided the perpetrator's act with knowledge of the danger to, and with conscious disregard for, human life." (*White, supra*, C094499.)  We therefore remanded the matter to the trial court with directions to issue an order to show cause under section 1172.6, subdivision (c) and hold a hearing pursuant to subdivision (d).  (*White, supra*, C094499.)

In January 2023, the trial court issued an order to show cause and set a hearing date and briefing schedule.  The People submitted the trial transcript from defendant's second trial with their responsive brief and stated their intent to rely solely on that evidence to carry their burden.  The People argued the evidence proved that defendant remained guilty of murder as a direct aider and abettor who harbored either express or implied malice:  "Three men, at least two of whom were armed with knives, motivated by a warped sense of vigilante justice or retribution, lured the victim to a park bathroom in the early morning where they stabbed him to death.  [Defendant] was a close associate of the other perpetrators, knew they had knives as he supplied them, and knew . . . the heightened emotional state he created could lead to a severe and violent conclusion of the encounter.  While in the bathroom, the victim was stabbed 26 times, attempted to flee, and [defendant] held him while he was stabbed.  This is clear evidence of creating circumstances that are dangerous to human life if not a direct intent to kill." (Fn. omitted.)  The People also relied on certain incriminating statements defendant made to a friend, Timothy Chacon, who helped him dispose of the knives and bloody clothing.

In his reply brief, defendant argued the jury must have rejected Montoya's account because Montoya claimed defendant stabbed the victim, and the jury found he did not personally use a knife.  Defendant also argued "Montoya was so unbelievable that nothing he said can be relied upon, much less accepted as true beyond a reasonable

5

doubt." Defendant noted that Montoya testified pursuant to an agreement under which the prosecutor promised to write him a "laudatory letter" for use at a future parole board hearing. Defendant further argued that the physical evidence cast doubt on whether he was inside the bathroom when the victim was murdered: the victim's blood was on the passenger side of defendant's truck, where Montoya was seated when they left the park, but there was no blood on the driver's side of the truck or on defendant's shoes. According to defendant, none of his clothing had blood splatter that would have occurred if Montoya's tale were true. Finally, defendant argued the statements attributed to him by Chacon were too vague to be convincing, and were further undercut by Chacon's testimony that defendant was "a tweaker, or meth addict, whose statements cannot be relied upon for truthfulness." Defendant asked the trial court to vacate the murder conviction and redesignate it a conviction for being an accessory after the fact based on his role in disposing of the knives and bloody clothing after the murder.

The trial court held the section 1172.6 hearing on April 28, 2023. After taking the matter under submission, the trial court granted defendant's petition, vacated his murder conviction, redesignated that conviction as a violation of section 32 [accessory after the fact], and sentenced him to an upper term of three years. We will describe the relevant details of the hearing and the trial court's decision in the discussion portion of this opinion. After the hearing, the People submitted a supplemental brief arguing, among other things, that section 1172.6 did not authorize redesignation of the murder conviction to a conviction for being an accessory after the fact because being an accessory was not a target crime or predicate felony underlying a theory of imputed malice. But if such a redesignation were to occur, the People asked the trial court to redesignate the murder conviction as an underlying crime reflecting the jury's necessary finding that defendant was guilty of aiding and abetting.

6

DISCUSSION

I

The People contend the trial court erred in vacating the murder conviction. They argue the section 1172.6 procedure is not a new trial and does not permit wholesale relitigation of findings supporting a murder conviction.

A

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) "narrowed or eliminated certain forms of accomplice liability for murder." (*People v. Curiel* (2023) 15 Cal.5th 433, 440 (*Curiel*).) Among other things, "Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. [Citation.] 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' [Citation.] One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine. . . . Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault. [Citation.] The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime. [Citation.] Senate Bill 1437 ended this form of liability for murder." (*Id*. at p. 449.)

"Senate Bill 1437 also created 'a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief.' [Citation.]" (*Curiel, supra*, 15 Cal.5th at p. 440.) That procedure is contained in section 1172.6. As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022, section 1172.6 was expanded "to encompass, among other things, murder convictions 'under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*.' [Citation.]" (*Langi, supra*, 73 Cal.App.5th at p. 978; see § 1172.6, subd. (a).)

7

In *Langi*, although the jury was not instructed on the natural and probable consequences doctrine, the instructions nevertheless allowed the jury to find the defendant guilty of aiding and abetting an implied malice murder "if it found that (1) the killing resulted from the actual killer's intentional act; (2) [the defendant] aided and abetted that intentional act; and (3) the killer 'deliberately performed [the act] with knowledge of the danger to, and with conscious disregard for, human life'—whether or not [the defendant] knew of or consciously disregarded the danger to human life." (*Langi, supra*, 73 Cal.App.5th at p. 981, italics omitted.) In other words, the instructions "permitted the jury to impute malice to [the defendant] based solely on his participation in a crime, without having to find that he personally acted with malice." (*Ibid*.)

As this court explained in *White, supra*, C094499, the same possibility of imputed malice existed here even though the jury was not instructed on the natural and probable consequences doctrine. Thus, the trial court was required to hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence defendant on any remaining counts. (§ 1172.6, subd. (d)(1).)

Section 1172.6, subdivision (d)(3) provides in relevant part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction,

8

and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."

We review for substantial evidence a trial court's factfinding as to whether a defendant committed murder under a still-valid theory. (*People v. Didyavong* (2023) 90 Cal.App.5th 85, 97.) But the preclusive effect of a prior jury finding is "an issue of law that we independently review." (*People v. Cooper* (2022) 77 Cal.App.5th 393, 412; *People v. Henley* (2022) 85 Cal.App.5th 1003, 1017.) Questions of statutory interpretation are also subject to de novo review. (*Didyavong*, at p. 96.)

B

At the hearing on defendant's section 1172.6 petition, the People acknowledged that the trial court was bound by the jury's finding that defendant did not personally use a knife to kill the victim, but argued the trial court was equally bound by the jury's necessary finding that defendant was guilty of aiding and abetting a murder. According to the People, the jury necessarily found that defendant aided and abetted an intentional act resulting in death. In response to questioning from the trial court, the People agreed the jury must have rejected some of Montoya's testimony, but the People argued the jury did not reject all of Montoya's testimony or the verdict would have been not guilty. The People added that the jury necessarily rejected defendant's testimony that he was outside the restroom the entire time and was unaware of anything going on in the restroom. The People asserted that defendant's actions after the murder provided circumstantial evidence corroborating some of Montoya's testimony.

Defense counsel argued the evidence did not support a finding that defendant was inside the restroom at the time of the murder. According to defense counsel, the only credible evidence placing defendant inside the restroom at all was defendant's statement to police that he used the restroom before Montoya, Campaz, and the victim went inside to smoke methamphetamine, after which he came outside and smoked marijuana while the murder was committed without his knowledge. Defense counsel said the size of the

9

restroom and lack of blood evidence on the driver's side of the truck undermined Montoya's testimony that defendant was inside the restroom and actively participated in the murder.

The trial court asked the People whether the jury's verdict indicated it did not find Montoya credible. The People agreed that some of Montoya's testimony was inconsistent with the verdict, but argued the jury necessarily found that defendant, at the very least, aided and abetted the assault that ended the victim's life. According to the People, all of the circumstantial evidence, viewed together, sufficiently supported a finding that defendant did so with implied malice.

Defendant then testified at the hearing. Generally tracking his trial testimony, defendant claimed Montoya and the victim went to the park together, after which defendant and Campaz met up with them there. Defendant used the restroom and then sat down on a bench to smoke marijuana. Montoya, Campaz, and the victim went into the restroom to smoke methamphetamine. A short time later, Campaz came out in a "frenzy" and said, "let's get the fuck out of here." Montoya followed Campaz out of the restroom "with a blank stare on his face." Campaz ran to the truck. Montoya followed. Defendant went inside the restroom, saw the deceased victim, and then followed Campaz and Montoya to the truck. According to defendant, he had no idea Montoya and Campaz were going to harm the victim inside the restroom. Defendant admitted bringing Montoya and Campaz back to his house, where they showered and changed clothes. He then called Chacon and disposed of the knives and bloody clothes. At the conclusion of defendant's testimony, the trial court took the matter under submission.

On June 8, 2023, the trial court granted defendant's petition. In its oral pronouncement of the decision, the trial court explained that its role was to decide whether the People had proven defendant was "guilty of murder on a currently valid theory." The trial court said it gave the evidence careful review and then provided a detailed summary of its assessment of that evidence. After describing the conflicting

10

accounts of what happened at the park on the morning the victim was stabbed to death, the trial court said it was bound by the jury's determination that defendant did not use a knife during the murder. The trial court also said it was bound by the jury's finding that defendant did not premeditate a murder. Because it was Montoya who testified that defendant planned the murder and personally stabbed the victim in the chest, neither of which the jury believed, the trial court determined that it could not credit Montoya's account. Based on that, and the lack of blood evidence placing defendant inside the restroom during the murder, the trial court found a reasonable possibility that defendant was outside the restroom when the victim was stabbed to death. The trial court then assessed Chacon's testimony and found that it did not leave the trial court with an abiding conviction of guilt, and there were reasons to doubt his veracity.

In a written ruling, issued the same day, the trial court addressed whether defendant directly aided and abetted an implied malice murder: "After careful consideration of all the evidence presented against [defendant], the court does not find the evidence proves beyond a reasonable doubt that [defendant] knew that Montoya or Campaz intended to stab or attack [the victim] in a way that endangered his life. The court does not find the evidence proves beyond a reasonable doubt that before or during the commission of the crime, [defendant] intended to aid or abet Campaz or Montoya in committing the deadly attack on [the victim]. And the court does not find the evidence proves beyond a reasonable doubt that [defendant's] words or conduct did in fact aid or abet in Campaz's or Montoya's commission of the attack."

C

The People argue the trial court should have granted the section 1172.6 petition only if defendant "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) The relevant change in the law was that a defendant may no longer be convicted of murder on a theory of imputed malice. By finding that defendant did not aid or abet any

11

underlying crime at all, the People argue, the trial court exceeded the scope of the statute by granting relief not because of any change in the law, but rather because the trial court disagreed with the jury's necessary finding that defendant aided and abetted an underlying criminal act.

The California Supreme Court's recent *Curiel* decision is instructive regarding the scope of a trial court's authority under section 1172.6, as well as the preclusive effect of prior jury findings. In that case the defendant was not the actual killer, but was instead convicted of murder either on a direct aiding and abetting theory or on a natural and probable consequences theory. The jury was instructed on both theories. (*Curiel, supra*, 15 Cal.5th at pp. 445-446.) The jury also found true a gang-murder special circumstance, which required the jury to find that the defendant intended to kill. (*Id*. at p. 440.) The trial court denied the defendant's section 1172.6 petition at the prima facie stage based on the jury's intent to kill finding. The Court of Appeal reversed, but agreed with the trial court that the prior finding had to be given preclusive effect. (*Id*. at p. 450.) The California Supreme Court affirmed. (*Id*. at p. 471.)

With respect to issue preclusion, the Supreme Court explained that five requirements must be established for a prior finding to be given preclusive effect: " ' "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' [Citation.]" (*Curiel, supra*, 15 Cal.5th at pp. 451-452.) Rejecting the defendant's argument that two of the requirements were missing, i.e., that his "intent to kill was actually litigated, and . . . necessarily decided," the Supreme Court explained: "The prosecution alleged the gang-murder special circumstance, which included an intent to kill element, and

12

[the defendant] put all elements of the special circumstance at issue by pleading not guilty. [Citation.] The [trial court] instructed the jury it could not find the special circumstance allegation true unless it determined [the defendant] 'intended to kill.' By finding the special circumstance allegation true, the jury necessarily found beyond a reasonable doubt that [the defendant] intended to kill." (*Id*. at p. 452.) The Supreme Court further explained that while there are equitable exceptions to the doctrine's application, the defendant did not demonstrate that any such exception should have prevented the trial court from giving preclusive effect to the jury's intent to kill finding. (*Id*. at pp. 454-460.)

However, that prior finding of intent to kill did not render the defendant ineligible for relief as a matter of law. Although the defendant was entitled to relief only if he "could not be convicted of the relevant homicide offense . . . 'because of changes to Section 188 or 189 made effective January 1, 2019' " (*Curiel, supra*, 15 Cal.5th at p. 460), those changes "eliminated the doctrine of natural and probable consequences in its entirety." (*Id*. at p. 462.) Because the jury might have convicted the defendant of murder under that now-invalid theory, the defendant was entitled to relief unless he could presently be convicted of murder under "a different, valid theory, such as direct aiding and abetting." (*Ibid*.) Thus, by alleging that he could not currently be convicted of murder " 'because of changes to Section 188 or 189 made effective January 1, 2019' (§ 1172.6, subd. (a)(3))," i.e., because of the elimination of the natural and probable consequences doctrine, the defendant "put[] at issue all elements of the offense under a valid theory." (*Ibid*.) And because "[a] finding of intent to kill does not, standing alone, cover all of the required elements" of murder on a direct aiding and abetting theory, that prior finding did not conclusively demonstrate the defendant's ineligibility for relief. (*Id*. at p. 463.)

Here, although the jury was not instructed on natural and probable consequences, as in *Langi, supra*, 73 Cal.App.5th 972, the instructions nevertheless allowed the jury to

13

find defendant guilty of aiding and abetting an implied malice murder if it determined that he aided and abetted an intentional act that killed the victim, i.e., the assault with a deadly weapon in the restroom, without necessarily finding he personally "knew of or consciously disregarded the danger to human life." (*Id*. at p. 981.) Thus, while the People are correct that defendant is entitled to relief only if he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)), those changes eliminated not only the natural and probable consequences doctrine, but also any theory under which malice is imputed to a person based solely on that person's participation in a crime. (*Langi,* at p. 978.) Because the jury might have convicted defendant of murder without finding that he personally harbored malice, and because defendant alleged in his petition that he could not presently be convicted of murder due to changes to the murder statutes, he placed at issue all elements of the offense under the direct aiding and abetting theory. (*Curiel, supra*, 15 Cal.5th at p. 462.)

Under the circumstances, the trial court did not exceed its authority in holding the hearing required by section 1172.6, subdivision (d). Nor did it exceed its authority in granting the petition for resentencing. Defendant was entitled to relief under section 1172.6 as long as the trial court determined that the People did not prove one of the elements of direct aiding and abetting a murder. The trial court so determined: "After careful consideration of all the evidence presented against [defendant], the court does not find the evidence proves beyond a reasonable doubt that [defendant] knew that Montoya or Campaz intended to stab or attack [the victim] in a way that endangered his life." If defendant did not know the assault that he aided and abetted would endanger the victim's life, then he did not harbor implied malice. That determination is supported by the evidence cited by the trial court when it made its ruling. Accordingly, we will affirm the portion of the judgment vacating defendant's murder conviction.

14

II

The People also contend the trial court erred in finding that defendant was only an accessory after the fact.

Section 1172.6, subdivision (e) provides in relevant part that the vacated murder conviction "shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder . . . was charged generically, and the target offense was not charged." Here, defendant was entitled to relief, the information charged murder generically, and no target offense was charged along with the murder. The vacated murder conviction must therefore be redesignated as the target offense or underlying felony. (§ 1172.6, subd. (e).)

Although there was no target offense, there was an underlying felony: an assault with a deadly weapon. Unlike that crime, a violation of section 32, accessory after the fact, is in no sense an "underlying felony." It is, by definition, an after-the-fact felony.

The trial court should have given deference to the jury's necessary finding that defendant aided and abetted, at the very least, an assault with a deadly weapon. Here, although the jury did not necessarily find that defendant personally "knew of or consciously disregarded the danger to human life" posed by the knife attack in the restroom, it did necessarily find that "(1) the killing resulted from the actual killer's intentional act; (2) [defendant] aided and abetted that intentional act; and (3) the killer 'deliberately performed [the act] with knowledge of the danger to, and with conscious disregard for, human life.' " (*Langi, supra*, 73 Cal.App.5th at p. 981.) Those findings are entitled to preclusive effect. (*Curiel, supra*, 15 Cal.5th at pp. 453-454 ["a relevant jury finding is generally preclusive in section 1172.6 proceedings" and "it is difficult to foresee a situation in which a relevant jury finding, embodied in a final criminal judgment, would not meet the traditional elements of issue preclusion"].) There was no dispute that the intentional act that ended the victim's life was an assault with a deadly

15

weapon.  The jury necessarily found that defendant aided and abetted that assault.  And while the trial court was careful to give preclusive effect to certain other jury findings -- the findings that defendant did not personally use a knife and did not premeditate a murder -- it did not credit the jury's finding that defendant, at the very least, aided and abetted the underlying crime of assault with a deadly weapon.

"The Legislature enacted Senate Bill 1437 'to more equitably sentence offenders in accordance with their involvement in homicides.'  [Citation.]" (*Curiel, supra*, 15 Cal.5th at p. 448.)  Where, as here, the jury finds the defendant guilty of murder on a direct aiding and abetting theory, it has necessarily found that defendant was involved in the murder.  Defendant's involvement may not have included the requisite malice to support his murder conviction.  But the jury necessarily found that defendant aided and abetted the act that ended the victim's life.  That act was an assault with a deadly weapon. We will reverse the finding that defendant violated section 32, vacate the sentence imposed on that redesignated conviction, and remand the matter for the trial court to redesignate the vacated murder conviction as the underlying felony (§ 1172.6, subd. (e)), an assault with a deadly weapon, and resentence defendant accordingly.

## DISPOSITION

The judgment is affirmed to the extent it vacated defendant's murder conviction. The judgment is reversed to the extent it redesignated the murder conviction as a violation of Penal Code section 32.  The sentence imposed for the redesignated conviction is vacated and the matter is remanded to the trial court with directions to redesignate the vacated murder conviction as a violation of Penal Code section 245 and to resentence defendant accordingly.


                    _____/S/_____

                    MAURO, J.


16

We concur:



_____/S/_____
HULL, Acting P. J.



_____/S/_____
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.